

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   URIEL GARCIA,                          Case No.: 1:19-cv-01631-KES-CDB (PC)

12                    Plaintiff,
                                            **FINDINGS AND RECOMMENDATIONS TO**
13          v.                              **GRANT DEFENDANTS' MOTION FOR**
                                            **SUMMARY JUDGMENT**
14   POWELL, et al.,
                                            (Doc. 58)
15                    Defendants.

16

17          Plaintiff Uriel Garcia is proceeding pro se and *in forma pauperis* in this civil rights action

18   pursuant to 42 U.S.C. section 1983. This action proceeds against Defendants Powell, Hurtado,

19   and Ugwueze for deliberate indifference to Plaintiff's serious medical needs in violation of the

20   Eighth Amendment.

21          **I.     INTRODUCTION**

22          Defendants filed a motion for summary judgment on Plaintiff's claims on November 18,

23   2024. (Doc. 58.) Plaintiff filed an opposition (Doc. 64) on January 27, 2025, and Defendants

24   replied (Doc. 65) on January 29, 2025.

25          **II.    APPLICABLE LEGAL STANDARDS**

26          ***Motions for Summary Judgment***

27          Summary judgment is appropriate when it is demonstrated that there "is no genuine

28   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

1  whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P.

2  56(e) advisory committee's note on 1963 amendments).

3      In resolving the summary judgment motion, the evidence of the opposing party is to be

4  believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the

5  facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475

6  U.S. at 587; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002) ("all

7  justifiable inferences" must be drawn in favor of the nonmoving party). Nevertheless, inferences

8  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

9  predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.

10  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

11  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

12  some metaphysical doubt as to the material facts.... Where the record taken as a whole could not

13  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

14  *Matsushita*, 475 U.S. at 587 (citation omitted).

### *Eighth Amendment: Deliberate Indifference to Serious Medical Need*

16      Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

17  prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

18  is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

19  infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.

20  Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

21  (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

22  Cir. 1997) (en banc)).

23      To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

24  first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

25  could result in further significant injury or the unnecessary and wanton infliction of pain. Second,

26  the plaintiff must show the defendants' response to the need was deliberately indifferent."

27  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096)

28  (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680

4

F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002)

(prisoner must show delay led to further injury).

### III.     PLAINTIFF'S CLAIMS

#### *Relevant Background*

Plaintiff filed his second amended complaint on August 17, 2020. (Doc. 11.) The then-assigned magistrate judge issued Findings and Recommendations to Dismiss Action for Failure to State a Claim on January 24, 2021 (Doc. 15); the recommendations were adopted by the then-assigned district judge on February 8, 2021 (Doc. 17). Thereafter, Plaintiff appealed the dismissal (Doc. 19), and the Ninth Circuit Court of Appeals ultimately reversed and remanded the matter for further proceedings regarding Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims (Doc. 23, 26).

#### *The Factual Allegations Asserted[1]*

Plaintiff alleges that he injured his finger during the first week of January 2019. (Doc. 11 at 3.) Though he showed his finger to Nurse Powell on multiple occasions, she only provided him bandages to wrap it and told him he would be fine. (*Id*.) On January 22, 2019, Plaintiff saw Dr. Kokor, who issued an "urgent medical treatment order." (*Id*.) Thereafter, Plaintiff saw Nurse Hurtado via telemedicine videoconference, who diagnosed Plaintiff with a fractured finger. (*Id*. at 4.) Plaintiff states that he was not scheduled for surgery at that time and instead "sent back to his cell to suffer." (*Id*. at 4-5.) Plaintiff saw Nurse Hurtado again on February 20, 2019. (*Id*. at 5.) At that time, either Nurse Hurtado or Chief Medical Executive Godwin scheduled Plaintiff for corrective surgery on February 27, 2019. (*See id*. at 3-4, 5.) Plaintiff alleges these defendants violated state regulations by not scheduling the surgery within three days of Dr. Kokor's order on January 22, 2019. (*Id*. at 3, 5.)

Next, Plaintiff asserts Dr. Swafford[2] performed corrective surgery on Plaintiff's finger on February 27, 2019. (Doc. 11 at 6.) Plaintiff states that the surgery caused him "nerve damage

---

[1] These factual allegations were summarized in the Findings and Recommendations issued on January 4, 2021; minor changes have been made here. (*See* Doc. 15.)

[2] Dr. Swafford was dismissed from this action on September 29, 2023. (*See* Doc. 51.)

from [his] hand up to his neck" and left his finger "crooked." (*Id.*) Plaintiff alleges Dr. Swafford damaged both the previously injured finger as well as the "small finger next to it." (*Id.* at 6-7.) Nevertheless, Plaintiff asserts that he continues to be returned to the "malpracticing surgeon." (*Id.* at 8.)

## IV.    SUMMARY OF THE PARTIES' BRIEFING

### *Defendants' Motion for Summary Judgment (Doc. 58-1)*

Defendants contend they were not deliberately indifferent to Plaintiff's serious medical needs. Specifically, Defendants argue Defendant Powell did not deliberately fail or refuse to provide medical care to Plaintiff, Defendant Hurtado was not deliberately indifferent because she acted within her authority as a utilization management nurse in processing the requests for Plaintiff's orthopedic evaluation and procedure, and Defendant Ugwueze, the Chief Medical Executive at the Substance Abuse Treatment Facility (SATF), was not deliberately indifferent because he did not purposefully ignore or fail to respond to Plaintiff's medical needs. Additionally, Defendants argue they are entitled to qualified immunity.

### *Plaintiff's Opposition to Defendants' Motion (Doc. 64)*

Plaintiff summarily contends that Defendants are not entitled to judgment as a matter of law because they delayed or denied medical care, that he has demonstrated that Defendants caused him harm by their delay, and that Defendants are not entitled to qualified immunity.

### *Defendants' Reply to Plaintiff's Opposition (Doc. 65)*

Defendants maintain the undisputed evidence demonstrates Defendant Powell promptly and adequately responded to Plaintiff's medical concerns by consulting with licensed physicians and providing treatment, Defendant Hurtado fulfilled her duties as a utilization management nurse by timely processing high priority requests for an orthopedic consultation and surgical procedure, and Defendant Ugwueze timely approved the high priority requests from the primary care physician. Defendants assert Plaintiff has not put forth any evidence to the contrary and has failed to produce evidence establishing Ugwueze was responsible for any delay or that Plaintiff suffered harm due to a scheduling delay. Finally, Defendants argue Plaintiff's opposition fails to show Defendants are not entitled to qualified immunity.

1    **V.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

2    Defendants submit the following as undisputed facts (UDF):

3    1. At all relevant times, Plaintiff was an inmate in the custody of the California

4    Department of Corrections and Rehabilitation (CDCR) and was housed at the SATF in

5    Corcoran, California

6    2. At all relevant times, Defendant K. Powell was employed by CDCR at SATF as a

7    Registered Nurse

8    3. At all relevant times, Defendant T. Hurtado was employed by CDCR at SATF as a

9    Utilization Management Nurse

10   4. At all relevant times, Defendant G. Ugwueze was employed by CDCR at SATF as a

11   Chief Medical Executive

12   5. Plaintiff, whose first language is Spanish, did not draft his Second Amended

13   Complaint

14   6. At his deposition taken on May 3, 2024, Plaintiff testified that another SATF inmate

15   drafted the complaint based on Plaintiff's medical records

16   7. Plaintiff did not communicate his factual allegations to the inmate who drafted his

17   complaint against Defendants

18   8. Plaintiff does not have personal knowledge as to whether Ugwueze "modified" Dr.

19   Kokor's order from January 22, 2019, to February 27, 2019, as alleged in his

20   complaint

21   9. Plaintiff does not know "what role" Ugwueze "plays in all of this"

22   10. Plaintiff did not wait three weeks to receive medical attention from Powell as alleged

23   in his complaint

24   11. Plaintiff testified that Dr. Swafford "was the one that injured or damaged [his] finger

25   directly, and Plaintiff only sued Powell, Hurtado, and Ugwueze because the inmate

26   who drafted his complaint told Plaintiff that he "needed to drag them in"

27   12. Plaintiff is not a medical doctor

28   13. During the relevant period, Plaintiff's requests for specialty medical services were

7

initiated by an inmate-patient's primary care provider, who would submit a Request for Services, CDCR Form 7243

14. Each Request for Services is subject to two levels of review

15. For a Request for Services involving a high priority (urgent) consultation or procedure, the primary care physician submits the request electronically to the utilization management nurse for the first level of review

16. The high priority Request for Services are processed by the utilization management nurse within two business days of receipt from the primary care physician

17. Upon receipt of the Request for Services, the utilization management nurse enters the information on the Request for Services form into the InterQual database

18. InterQual is a set of medical standards that are clinically based on best medical practices, clinical data, and medical literature

19. InterQual criteria are a first-level screening tool that assists medical providers in determining whether a proposed service is clinically indicated or if further evaluation of the patient is necessary

20. Once a patient's medical information is entered into the database, InterQual indicates whether the requested service or procedure is medically recommended

21. The utilization management nurse then forwards these results electronically to the chief medical executive or the chief physician and surgeon for second level review

22. High priority Request for Services must be processed in a manner that allows for both the first and second level of review to be completed within five calendar days from the date of the Request for Services

23. If the Request for Services is approved by the chief medical executive or the chief physician and surgeon, the utilization management nurse will forward the approved Request for Services to the designated specialty clinic staff person (offsite scheduler) for scheduling the consult or procedure with the specialty provider

24. Neither the utilization management nurse nor the chief medical executive handle scheduling of consults or procedures with specialty providers

8

25. If approved by the second level reviewer, a high priority consultation or procedure must be provided within 14 calendar days of the primary care physician's order for that service

26. Between submission of a Request for Services for a high priority consult until the specialist appointment occurs, the inmate-patient's primary care physician must follow the inmate-patient as clinically indicated and determined necessary by the primary care physician

27. Per policy, the specialty clinic staff person shall notify the chief medical officer and the primary care physician when a high priority consultation cannot be scheduled within, or exceeds, the 14-day time frame

28. On Friday, December 28, 2018, at approximately 1:53 p.m., Defendant Powell examined Plaintiff who complained of throbbing pain in the finger of his right hand

29. Plaintiff related that the injury was caused by a fall about a week earlier

30. Defendant Powell noted Plaintiff's fourth digit (the ring finger) on his right hand had bruising and slight swelling only

31. Defendant Powell consulted with Dr. Kokor, Plaintiff's primary care physician, about Plaintiff's right hand and Kokor advised that Plaintiff return for a follow up appointment in three days on December 31, 2018

32. Before Plaintiff returned to his housing unit, Defendant Powell wrapped his fingers with buddy tape and gave him some Tylenol for the pain

33. The buddy tape serves as a splint, which restricts movement of the affected finger to avoid further injury

34. Defendant Powell instructed Plaintiff to follow up on Monday, December 31, 2018, for further evaluation

35. On December 31, 2018, at about 4:56 p.m., Defendant Powell met with Plaintiff for his follow up appointment

36. At that time, Plaintiff complained of throbbing pain radiating from his lower right arm

37. Defendant Powell examined Plaintiff's right hand ring finger and saw that Plaintiff

9

1  was unable to bend that finger

2  38. Based on her evaluation of Plaintiff on that date, Defendant Powell consulted with

3  Defendant Ugwueze by phone for further treatment of Plaintiff's right hand

4  39. Defendant Ugwueze recommended an x-ray be done on Plaintiff's right hand and

5  authorized Defendant Powell to place the order for an x-ray on his behalf

6  40. Orders for x-rays are typically authorized by the inmate-patient's primary care

7  physician, not the chief medical executive

8  41. Defendant Ugwueze authorized the order for x-ray because Plaintiff's primary care

9  physician was not available for an authorization on December 31, 2018

10  42. The x-ray was completed on January 3, 2019

11  43. The radiology report for the x-ray indicated possible fractures of Plaintiff's fourth

12  finger and hamate bone

13  44. Based on her medical knowledge, education, and training as a nurse, her examination

14  of Plaintiff, and her consultations with Kokor and Ugwueze, Defendant Powell

15  provided Plaintiff with medical treatment she believed was medically necessary and

16  appropriate under the circumstances

17  45. On January 22, 2019, Plaintiff's primary care physician submitted a high priority

18  Request for Services for orthopedic surgery evaluation, which Defendant Hurtado, as

19  the utilization management nurse, processed that same day in accordance with policy

20  and procedure

21  46. Defendant Ugwueze reviewed and approved the same Request for Services on January

22  22, 2019, which Defendant Hurtado then forwarded to the offsite scheduler who

23  would schedule Plaintiff's appointment to see the specialty provider

24  47. Medical records indicate Plaintiff received pain medication during the month of

25  January 2019

26  48. On February 19, 2019, Plaintiff was transported offsite for an evaluation by

27  Orthopedic Surgeon Swafford

28  49. The evaluation by Swafford occurred approximately 28 days after the January 22,

10

1     2019, Request for Services was approved

2   50. It did not come to Defendant Ugwueze's attention that there were any issues involving

3     the scheduling of Plaintiff's consultation with the orthopedic surgeon

4   51. Had it come to his attention, Defendant Ugwueze would have looked into the matter

5     by contacting Plaintiff's primary care physician or the specialty provider

6   52. On February 20, 2019, Plaintiff's primary care provider submitted a high priority

7     Request for Services, requesting a proximal interphalangeal (PIP) joint right finger

8     plate arthroplasty, a surgical procedure, for Plaintiff

9   53. Defendant Hurtado processed the Request for Services on February 20, 2019, and it

10    was approved by Defendant Ugwueze that same day

11   54. As with the January 22, 2019, Request for Services, Defendant Hurtado then

12    forwarded the approved request for services to the offsite scheduler

13   55. Plaintiff was transported offsite and underwent the arthroplasty procedure on February

14    27, 2019

15   56. Medical records indicate Plaintiff continued to receive pain medication in February

16    and March 2019

17   57. Defendant Ugwueze did not "modify" the primary care physician's order from January

18    22, 2019, to February 27, 2019, as Plaintiff alleges in his second amended complaint

19   58. Defendant Ugwueze adhered to his duties as chief medical executive and followed the

20    CDCR and SATF policy and procedures on specialty health care services

21   59. As a utilization management nurse, Defendant Hurtado does not have inmate-patient

22    encounters through Telemed appointments and therefore would not have interacted

23    with Plaintiff on either January 22, 2019, or February 20, 2019, as alleged in

24    Plaintiff's complaint

25 (*See* Doc. 58-2, with minor modification.)

26   Plaintiff has submitted a response to Defendants' statement of UDF. Plaintiff admits UDF

27 numbers 1 through 14, 21, 28 through 30, 32, 34 through 37, 42, 48, and 55. Concerning the

28 remaining UDF—numbers 15 through 20, 22 through 27, 31, 33, 38 through 41, 43 through 47,

49 through 54, and 56 through 59 — Plaintiff states he does not have "enough information to agree or deny." (*See* Doc. 4-6.)

To the extent Plaintiff argues he does not have sufficient evidence to admit or deny Defendants' UDF numbers 15 through 20, 22 through 27, 31, 33, 38 through 41, 43 through 47, 49 through 54, and 56 through 59, the undersigned will treat those facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2). A party's mere claim that a matter is "disputed" or "denied" as Plaintiff suggests does not suffice to dispute a fact that is supported by competent evidence. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); *Burch v. Regents of Univ. of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment" (emphasis omitted)).

## V.    DISCUSSION

### A.    Defendant Powell is Entitled to Summary Judgment

Defendant Powell argues she was not deliberately indifferent to Plaintiff's serious medical needs because she responded to Plaintiff's medical needs during her two encounters with him. *See* UDF 10, 28-42. Specifically, she contends Plaintiff did not wait three weeks to receive medical attention as alleged in the operative complaint. UDF 10. Further, during Powell's first encounter with Plaintiff on December 28, 2018, Powell examined Plaintiff's finger, noted bruising and slight swelling on the fourth (ring) finger of his left hand, consulted with Plaintiff's primary care physician, wrapped Plaintiff's fingers with buddy tape, provided him with Tylenol for pain, and advised Plaintiff to return in three days for a follow up appointment. UDF 28-34. On December 31, 2018, during Powell's second encounter with Plaintiff, she examined Plaintiff's right hand, noted his inability to bend the ring finger, consulted with Defendant Ugwueze, in the absence of Plaintiff's primary care physician, who authorized Powell to order an x-ray, and ordered x-rays

that were completed on January 3, 2019. UDF 35-42. Thus, Defendant has met his initial burden of establishing that Plaintiff's Eighth Amendment rights were not violated. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322.

Accordingly, the burden shifts to Plaintiff to establish that a genuine issue as to those material facts exists. *See Matsushita Elec. Indus. Co*., 475 U.S. at 586. Plaintiff fails to do so. Plaintiff admits UDF numbers 10, 28, 29, 30, 32, 34, 35, 36, 37, and 42. While Plaintiff indicated he did not have enough information to admit or deny UDF numbers 31 and 33—that Powell consulted with his primary care physician on December 31, 2018 and that buddy tape serves as a splint, restricting movement to avoid further injury—his mere assertions concerning a lack of information are insufficient. Fed. R. Civ. P. 56(e)(2). Plaintiff offers no evidence whatsoever to counter those facts. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

In sum, Defendant Powell met her initial burden of establishing that she was not deliberately indifferent to Plaintiff's serious medical needs. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322; *Farmer*, 511 U.S. at 835, 847; *Wilhelm*, 680 F.3d at 1122. Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material fact as to this issue exists. *See* Fed. R. Civ. P. 56(e)(2); *Matsushita*, 475 U.S. at 586. Thus, Defendant Powell is entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

### B.    Defendant Hurtado is Entitled to Summary Judgment

Defendant Hurtado contends he was not deliberately indifferent to Plaintiff's serious medical needs because she acted within her authority as a utilization management nurse to process requests for service concerning Plaintiff's orthopedic evaluation and procedure. *See* UDF 24, 45-46, 52-54, 59. More particularly, Hurtado processed two high priority Request for Services concerning Plaintiff's medical needs—submitted on January 22, 2019, and February 20, 2019— on the same day she received them, forwarded both requests to Defendant Ugwueze who approved them, and then timely forwarded the approved requests to an offsite scheduler responsible for scheduling consultations and procedures with specialty providers. UDF 24, 45-46, 52-54; *see also* UDF 3, 13-24. And the medical record establishes that Plaintiff's claim Hurtado examined him via "Telemed Computer" is misplaced; Hurtado did not perform inmate-patient

1  appointments through telemedicine and thus did not interact with Plaintiff during the relevant

2  period. UDF 59. Thus, Defendant has met his initial burden of establishing that Plaintiff's Eighth

3  Amendment rights were not violated. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at

4  322.

5          The burden then shifts to Plaintiff to establish that a genuine issue as to those material

6  facts exists. *See Matsushita*, 475 U.S. at 586. As set forth above in addressing the inadequacy of

7  his objections to/disputes concerning Defendants' proffer of undisputed facts, Plaintiff fails to

8  meet his burden. While Plaintiff indicated he did not have enough information to admit or deny

9  the facts relevant to his claim against Defendant Hurtado—UDF numbers 24, 45 through 46, 52

10  through 54, and 59—his mere assertions concerning a lack of information are insufficient. Fed. R.

11  Civ. P. 56(e)(2). Plaintiff offers no evidence to counter those facts. *See* Fed. R. Civ. P. 56(c);

12  *Matsushita*, 475 U.S. at 586 n.11.

13          In sum, Defendant Hurtado met his initial burden of establishing that he was not

14  deliberately indifferent to Plaintiff's serious medical needs. *See* Fed. R. Civ. P. 56(c)(1)(A);

15  *Celotex Corp.*, 477 U.S. at 322; *Farmer*, 511 U.S. at 835, 847; *Wilhelm*, 680 F.3d at 1122.

16  Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material

17  fact as to this issue exists. *See Matsushita*, 475 U.S. at 586. Thus, Defendant Hurtado is entitled to

18  summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

19          **C.**     **Defendant Ugwueze is Entitled to Summary Judgment**

20          Defendant Ugwueze argues he was not deliberately indifferent to Plaintiff's serious

21  medical needs because he did not purposefully ignore or fail to respond to Plaintiff's medical

22  needs.

23          Specifically, Ugwueze, as the chief medical executive at SATF, approved both the

24  January 22, 2019, and February 20, 2019, high priority Requests for Services from Plaintiff's

25  primary care physician on the same day he received them. UDF 45-46, 52-53, 55; *see also* UDF

26  13-24. He asserts there is no evidence suggesting Ugwueze "modified" either of those requests as

27  Plaintiff alleges in the operative complaint. UDF 8-9.[3] Moreover, he argues that to the extent

28

---

[3] When Plaintiff was asked whether he had any "personal knowledge as to whether Dr. Ugwueze modified Dr.

1    Plaintiff contends that he delayed any treatment, the record evidence establishes that Ugwueze

2    was not involved in scheduling specialty procedures or services after approval of Requests for

3    Services,[4] that CDCR policy provides that any delay exceeding the applicable 14-day scheduling

4    time frame is to be reported to the chief medical officer[5] and the primary care physician, that an

5    inmate-patient's primary care physician is responsible for following his care during the time a

6    Request for Services is submitted through the date the specialty appointment is held, and that

7    Ugwueze was not aware of any scheduling issues concerning Plaintiff's consultation with the

8    orthopedic surgeon. UDF 24-27, 45-46, 48-50, 58. Further, Ugwueze declares that had such a

9    delay come to his attention, he would have investigated by contacting Plaintiff's primary care

10   physician or the specialty provider. UDF 51. Defendant asserts that because he was not Plaintiff's

11   primary care physician, he had no duty to follow Plaintiff's care after approving the Requests for

12   Services. UDF 4, 26, 31. On the occasion Ugwueze did perform a task typically handled by an

13   inmate-patient's primary care physician—by approving x-rays of Plaintiff's hand on December

14   31, 2018—he did so because Plaintiff's primary care physician was unavailable on that date. UDF

15   39-42. Thus, Defendant has met their initial burden of establishing that Plaintiff's Eighth

16   Amendment rights were not violated. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at

17   322.

18        The burden then shifts to Plaintiff to establish that a genuine issue as to those material

19   facts exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Yet again, Plaintiff fails to do so.

20   Plaintiff admits UDF numbers 4, 6, 8, 9, 42, and 55. And while Plaintiff indicated he did not have

21   enough information to admit or deny the additional facts relevant to his claim against Defendant

22   Ugwueze—UDF numbers 26, 31, 39 through 41, 45 through 46, and 52 through 53—his mere

23   ───────────────

24   Kokor's order by changing the date from January 22nd, 2019 to February 27th, 2019," Plaintiff testified: "That's

25   correct. So yes, the transgender [inmate who assisted Plaintiff by drafting his complaints], he was the one that looked at all the documentation that he had to base himself on what he wrote here, on this lawsuit." (Garcia Depo., at 45.)

26   [4] *See* Doc. 58-10 at 3, ¶ 9 (Ex. A to Declaration of Ugwueze [stating a specialty clinic staff person is responsible for scheduling approved Requests for Services].)

27

28   [5] *See* Doc. 58-10 at 4, § D., ¶ 1 (Ex. A to Declaration of Ugwueze [indicating the specialty clinic staff person shall notify the "Health Care Manager/Chief Medical Officer (HCM/CMO)" if the 14-day period is exceeded].)

1   assertions concerning a lack of information are insufficient. Fed. R. Civ. P. 56(e)(2). Again,

2   Plaintiff offers no evidence to counter those facts. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S.

3   at 586 n.11.

4        At bottom, Defendant Ugwueze met their initial burden of establishing that he was not

5   deliberately indifferent to Plaintiff's serious medical needs. *See* Fed. R. Civ. P. 56(c)(1)(A);

6   *Celotex Corp.*, 477 U.S. at 322; *Farmer*, 511 U.S. at 835, 847; *Wilhelm*, 680 F.3d at 1122.

7   Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material

8   fact as to this issue exists. *See Matsushita*, 475 U.S. at 586. Thus, Defendant Ugwueze is entitled

9   to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

10              **D.    Additional Relevant Information**

11       The undersigned reviewed the transcript of Plaintiff's deposition taken May 2, 2024. (See

12   Doc. 59 [Notice of Lodging] & Docket Entry 62 [Acknowledgment of Receipt of Deposition

13   Transcript].) Following that review, the undersigned notes the following relevant testimony.

14       During his deposition, Plaintiff testified that Swafford (an orthopedic surgeon who was

15   dismissed from this action when service could not be effected[6]) caused his injury and that he

16   "really didn't want to sue anyone else. I didn't want to have any problems with anyone else. I

17   didn't feel they had done anything." A short time later, the following colloquy occurred:

18       Q. Before we left for break, you had stated that defendants Powell,
         Hurtado and Ugwueze, you felt that they didn't do anything wrong.
19       [¶] Is that accurate?

20       A.  I'm not saying that they didn't do anything. If they did or if they
         didn't that they know. I just, I'm just saying that I don't want to have
21       problems with anyone. I don't want to have problems with anyone
         that did not have something to do with injuring my finger like this
22       directly. [¶] But the person that drafted this complaint told me that I
         needed to drag them in, that I needed to bring them to court as well
23       because that's how the system works. So I'm just saying that I don't
         know if they're guilty, if they made mistakes or if they didn't. I don't
24       know. I'm just saying that I don't want any problems with them.

25       Q. So I understand, you still want to proceed on your Eighth
         Amendment deliberate indifference claims against defendants
26       Powell, Hurtado and Ugwueze, right?

27

28   ---
     [6] *See* Docs. 30-32, 34-37, 41-43, 46, 49-51.

A.  No.

(Garcia Depo., at 48-49.) And when asked again about his claims against Defendants Powell, Hurtado and Ugwueze and his wish to proceed on those claims, Plaintiff testified: "No, I don't want to continue carrying on with any of it. The only one that I'm interested in is Dr. Swafford because he is the one that injured or damaged my finger directly. He's the only one that I'm interested in, but no one else." (*Id.*, at 49-50.) Thereafter, a brief discussion occurred about the possibility of Plaintiff executing a voluntary dismissal as to Defendants. (*Id.* at 50-51.)

### *Summary of Findings*

This Court finds Defendants Powell, Hurtado, and Ugwueze are entitled to summary judgment on Plaintiff's claims of deliberate indifference to serious medical needs and will recommend Defendants' motion be granted. As a result, it elects to forego an analysis of Defendants' affirmative defense of qualified immunity.

### IV.    CONCLUSION AND RECOMMENDATION

Accordingly, based upon the foregoing, this Court **HEREBY RECOMMENDS**:

1.  Defendants' motion for summary judgment (Doc. 58) be **GRANTED**;

2.  Judgment be entered in favor of Defendants Powell, Hurtado, and Ugwueze and against Plaintiff; and

3.  The Clerk of the Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15- page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28

U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **April 22, 2025**

_____
UNITED STATES MAGISTRATE JUDGE